In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1405

RICHARD A. HAZELTON
and KELLY J. HAZELTON,

*Appellees,*

*v.*

THE BOARD OF REGENTS FOR THE
UNIVERSITY OF WISCONSIN SYSTEM
AND ITS UNIVERSITY OF WISCONSIN-STOUT,

*Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 18-cv-159-jdp — **James D. Peterson**, *Chief Judge.*

ARGUED NOVEMBER 8, 2019 — DECIDED MARCH 16, 2020

Before RIPPLE, ROVNER, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Richard and Kelly Hazelton asked a bankruptcy court to sanction the University of Wisconsin-Stout for collecting an educational debt after their debts were discharged in Chapter 7 bankruptcy. The bankruptcy

judge held that the debt was a nondischargeable student loan, so UW-Stout did not violate the discharge injunction. The district court reversed, concluding that the debt was *not* a student loan and thus was not excluded from the bankruptcy discharge. The district judge remanded to the bankruptcy court for further proceedings on the question of sanctions.

UW-Stout asks us to review the district court's order. We cannot do so. Our jurisdiction in bankruptcy cases under 28 U.S.C. § 158(d)(1) is limited to appeals from final district-court orders that resolve "discrete disputes" within the bankruptcy case. *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015). The dispute at issue here is whether UW-Stout should be sanctioned for violating the discharge injunction. The district court did not resolve that dispute. Rather, the judge decided a subsidiary legal issue and remanded to the bankruptcy court for resolution of the sanctions dispute. Accordingly, we lack jurisdiction and must dismiss the appeal.

## I. Background

In 2008 Kelly Hazelton began her studies at the University of Wisconsin-Stout. As part of the enrollment process, she and her husband, Richard, signed a document titled Payment Plan Agreement/Email Authorization. The document sets forth "credit terms" for the payment of tuition by students who choose to use the Partial Payment Plan. The Partial Payment Plan permits a student to defer tuition payments for the fall and spring semesters, with interest to accrue on the unpaid balance at an annual rate of 18%.

Kelly withdrew from school in 2011 but re-enrolled in 2014 and registered for classes in the summer 2015 term. She eventually completed her degree but did not pay her tuition bill. Because she owed back tuition, UW-Stout withheld her degree.

In 2016 the Hazeltons filed a Chapter 7 bankruptcy petition and received a discharge later that same year. Although UW-Stout was notified of the discharge, the school collected the tuition debt for the summer 2015 term by intercepting the Hazeltons' 2016 income-tax refund. UW-Stout then granted Kelly her degree.

The Hazeltons reopened their bankruptcy case and moved for sanctions against UW-Stout for violating the discharge injunction. The bankruptcy judge determined that the debt was a student loan and therefore was not subject to discharge. She reasoned that money did not need to change hands for a loan to take place. She also relied on language in the tuition-payment agreement referring to "credit" and an 18% annual interest rate on unpaid tuition. For these reasons the judge classified the debt as a nondischargeable student loan and denied the motion for sanctions.

The district judge reversed, holding that the debt to UW-Stout was indistinguishable from the tuition debt at issue in *In re Chambers*, 348 F.3d 650 (7th Cir. 2003). There we held that nonpayment of tuition qualifies as a nondischargeable student loan under 11 U.S.C. § 523(a)(8) *only* if funds have changed hands or the school has extended credit. *Id.* at 657. The judge noted that no funds had changed hands in the Hazeltons' case, nor was there an extension of credit: although the tuition-payment agreement permitted a student to defer payment for the *fall* or *spring* semesters, it did not

permit deferral of payment for a *summer* term. Accordingly, the judge held that the Hazeltons' debt to UW-Stout was not excluded from the discharge. He remanded the case to the bankruptcy court to decide whether sanctions should be imposed, and if so, in what amount.

## II. Discussion

We begin, as we must, with the question of our jurisdiction. *Ball v. City of Indianapolis*, 760 F.3d 636, 640 (7th Cir. 2014). When a district court sits in a bankruptcy-appellate capacity, the source of our jurisdiction to review the judge's order is 28 U.S.C. § 158(d)(1). That statute provides: "The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, order, and decrees entered under subsections (a) and (b) of this section." As relevant here, subsection (a) gives the district courts "jurisdiction to hear appeals … from final judgments, orders, and decrees … of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(1).[1]

The Supreme Court has explained that § 158 authorizes appeal as of right from "orders in bankruptcy cases … if they finally dispose of discrete disputes within the larger [bankruptcy] case." *Bullard*, 135 S. Ct. at 1692 (quotation marks omitted). The rationale for this more flexible approach

---

[1] Two other provisions in subsection (a) address the district court's jurisdiction to review nonfinal orders of the bankruptcy court. *See* 28 U.S.C. § 158(a)(2) (conferring jurisdiction to hear appeals from interlocutory orders increasing or reducing certain time periods); *id*. § 158(a)(3) (addressing review of interlocutory orders by leave of court). Subsection (b) addresses the judicial council's authority to establish a bankruptcy appellate panel. These provisions are not at issue here.

to finality in the bankruptcy context is that "[a] bankruptcy case involves an aggregation of individual controversies, many of which would exist as stand-alone lawsuits." *Id.* (quotation marks omitted). However, when the order in question does not finally resolve a discrete dispute and "[t]he parties' rights and obligations remain unsettled," the order lacks sufficient finality to support appellate jurisdiction. *Id.* at 1693.

The district court had jurisdiction under § 158(a)(1) to hear the Hazeltons' appeal. The bankruptcy judge denied their motion for sanctions against UW-Stout, fully and finally resolving that dispute. Our jurisdiction to hear UW-Stout's appeal under § 158(d)(1) is another matter. The district judge did *not* finally resolve the sanctions dispute. Rather, he decided a subsidiary legal issue embedded within the sanctions dispute and remanded to the bankruptcy court to determine whether sanctions are warranted. His order resolved a discrete *issue*; it did not resolve the sanctions *dispute*.

Our decision in *In re Ferguson* is instructive on this point. In that case, a junior creditor asked the bankruptcy court to order marshaling: "When a senior creditor can seek repayment from sources A and B, and a junior creditor from only B, marshaling under Illinois law allows a court to order the senior creditor to recover from A so long as that wouldn't harm the senior creditor." *In re Ferguson*, 834 F.3d 795, 797 (7th Cir. 2016). The bankruptcy court approved the request, but the district court reversed and remanded to the bankruptcy court. *Id.* at 798. The junior creditor appealed the district court's order.

We dismissed the appeal for lack of jurisdiction, holding that under *Bullard*, a district court's order in a bankruptcy appeal "is not final, and therefore is not appealable, unless only ministerial acts remain for the bankruptcy court." *Id.* We noted that on remand the bankruptcy court would have more than ministerial acts to perform: the bankruptcy judge had to determine how to divide the estate among the creditors. We explained that although the district court had finally resolved the *issue* of marshaling, "the *dispute*—Who gets how much money?—remains open." *Id*. at 800. Under those circumstances, the district court's order was not an appealable final decision under § 158(d)(1). *Id.*

The same reasoning applies here. The dispute between the Hazeltons and UW-Stout is whether sanctions are warranted for violation of the discharge injunction, and if so, in what amount. The district judge's order did not finally resolve that dispute. The judge decided only that the tuition debt was not excluded from the Chapter 7 discharge. That ruling leaves several nonministerial tasks for the bankruptcy court on remand. The bankruptcy judge must decide whether UW-Stout had an objectively reasonable basis to conclude that its conduct was lawful under the discharge order. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801–02 (2019). If it did not—if indeed there was "*no fair ground of doubt*" that the discharge order prohibited UW-Stout from intercepting the Hazeltons' 2016 income-tax refund—then the bankruptcy judge must decide the appropriate sanction. *Id*. at 1799. Until the bankruptcy judge decides these remedial questions, "[t]he parties' rights and obligations remain unsettled." *Bullard*, 135 S. Ct. at 1693.

In short, the district judge's order resolving the issue of dischargeability doesn't finally resolve the sanctions dispute. We lack jurisdiction to hear this appeal.

DISMISSED